IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIN K. MONTGOMERY           :

v.                           :   CIVIL NO. RDB-16-3760

IRON ROOSTER-ANNAPOLIS, LLC, :
CARL WERNER, PETER DAMON, and
KYLE ALGAZE                  :

## REPORT AND RECOMMENDATION

This matter was referred to me on March 28, 2017 for a Report and Recommendation on two issues (1) whether the court should impose sanctions on Plaintiff's failure to preserve electronically stored information on her cell phone, and (2) the Motion to Compel discovery filed April 7, 2017 (ECF 36). A hearing was held on May 5, 2017 with the Plaintiff present. I incorporate the evidence presented at the hearing in support of this Report and Recommendation. At the hearing, the parties addressed the issue of sanctions for potential violation of Fed. R. Civ. P. 37(e). The second issue regarding the Motion to Compel was already resolved in large part by the parties prior to the hearing. The Court will address the three remaining issues of the Motion to Compel in turn.

### Sanctions for violation of Fed. R. Civ. P. 37(e)

Defendants' position is that Plaintiff was an exempt employee during the contested time of her employment because she acted as a manager. Defendants will rely heavily on the exempt employee status in defense of any claim for unpaid overtime wages. The parties agreed however, that part of the time of Plaintiff's employment (March 2015 until March 2016) was as an employee and Plaintiff was not exempt from the requirements of the Fair Labor Standards Act and the Maryland Wage and Hour Law. Defendants brought this motion because during the time

Plaintiff was alleged to be exempt, she had an HTC cell phone on her mother's Verizon plan. Defendants allege that the cell phone *could have* contained text messages or other communications between Plaintiff and employees that would show she was acting as a manager[1]. Defendants also allege that the HTC phone *could have* contained communications and text messages between her and a Mr. Degler, a former employee who was Plaintiff's prior supervisor and who also brought a similar claim of unpaid overtime wages that was settled before litigation.

At the prior hearing before Judge Bennett, there was some conflicting evidence as to what exactly happened to the HTC phone. Judge Bennett needed clarification of the facts with respect to the HTC cell phone. At the hearing on May 5, 2017, with counsel's permission, the Court called Plaintiff to the stand. Plaintiff was placed under oath and answered the Court's questions as to the demise of the HTC phone. Plaintiff testified that in August, 2016, she was employed as a Real Estate Agent with Caldwell Banker. As such, she depended heavily on her phone for contacting her office, potential clients and receiving important documents such as mortgage applications or financial documents.

Plaintiff stated that on or about August 15, 2016, she began having problems with the phone so on that date, she turned the phone in to Verizon on an upgrade program. She received a Droid type phone as a replacement. She was given a $200.00 credit if she returned the HTC phone to Verizon as a "trade-in". In order to do so, she had to wait for Verizon to send her the shipping box and information to send the HTC phone back. Plaintiff testified that her text messages did not "migrate" from her HTC phone to the new phone. She was able to transfer her contacts and some other information. Plaintiff testified that it took additional time to get the shipping box and when she received it, she promptly returned the HTC phone which had long since been de-activated. It then took time for Verizon to send her the information that her phone

---

[1] Defendant removed work related emails from Plaintiff's phone and has those emails so they are not at issue here.

2

had been received and ultimately to credit Plaintiff's mother's account the $200.00 trade-in value. Plaintiff has produced to the Court documents that support each of Plaintiff's claims regarding when the phone was turned in (August 15, 2016), when it was shipped to Verizon (September 2016), when it was received and ultimately when the account was credited (October 4, 2016). The Court finds Plaintiff's testimony to be uncontradicted, supported by the evidence and credible. However, that does not necessarily relieve Plaintiff from her responsibilities under Fed. R. Civ. P. 37(e).

The parties agreed that Plaintiff was on notice of this litigation and specifically the Defendants' defense of being an exempt employee as early as May 4, 2016. That information was verified by emails as proffered by Defendants. According to counsel for Defendants, on June 23, 2016, Plaintiff through counsel, threatened Defendants with criminal action and ironically enough, requested *Defendants* preserve any electronic evidence. In June, 2016, Defendants sent Plaintiff's counsel a spread sheet showing Plaintiff's period of time as a bar manager and time as a non-exempt employee and had discussions with Plaintiff's counsel regarding Defendants' position. The HTC phone was de-activated two month later, on August 15, 2016 and shipped to Verizon with its texts and any other information which may have still been on the phone or may have been deleted in early September 2016. It was clear that Plaintiff had notice of her obligation to retain any information on the HTC phone as early as May, 2016. Plaintiff testified she did not know she had to keep the phone to preserve the ESI. Although there was no evidence presented by Defendants that any of the alleged texts or other communication did in fact exist, there is no evidence presented that it did not. The Court inquired of Defense counsel whether counsel had made any inquiry of any of the employees to verify that they had in fact

communicated with Plaintiff during the time period in question and Defendants' counsel stated he had not.

The Court is guided in this Report and Recommendation by Fed. R. Civ. P. 37(e). In evaluating the testimony of Plaintiff and the proffered evidence of counsel, much of which was not contradicted, I recommend finding that ESI that should have been preserved in the conduct of litigation was not preserved because Plaintiff failed to take reasonable steps to preserve it. I cannot recommend any finding as to whether the ESI can be restored or replaced since Defendants' Counsel has not made any inquiry of Defendants' employees who were alleged to be communicating with Plaintiff as to whether they have any relevant texts or ESI in their possession. I do recommend finding however, relying on the testimony of Plaintiff, that any loss of ESI was not with the intent to deprive the Defendants of the use of any ESI on her HTC phone. Plaintiff's testimony was credible that she simply did not know and was not advised that she was required to keep her HTC phone. Therefore, I recommend, pursuant to Rule 37(e)(1), that the "…[C]ourt order measures no greater than necessary to cure the prejudice". As a remedy I recommend the Court give an instruction to the jury that Plaintiff had a duty to maintain potential ESI contained on her phone, but failed to do so. The Court may further instruct the jury as to any inference to draw from the Plaintiff's failure to preserve texts on her phone. The Court may consider whether Defendants can show that there (1) were in fact texts between Plaintiff and employees during the relevant time period, and (2) whether there is any evidence to show that those communications would have been favorable to Defendants' claim of exempt status of Plaintiff.

4

### Remaining issues concerning the Motion to Compel

On May 7, 2017, the parties held a meet and confer in an attempt to resolve the issues presented in the Motion to Compel. Three issues remain for the Court's decision.

(1) Whether Defendants have to provide hours and payroll information for other managers employed by Iron Rooster. Plaintiff alleges the information is relevant to her duties while she worked as a manager. Defendants object alleging that there is no information in managers' hours and payroll that is relevant to their job duties.

(2) Whether Plaintiff needs to sufficiently supplement her Answer to Interrogatory 13 requesting a detailed damages calculation.

(3) Whether Plaintiff has to identify the actual documents Plaintiff copied, scanned or saved from the large amount of documents Defendants turned over in its document production.

### Issue 1

The Court inquired of counsel what their respective positions were as to issue 1 above. After hearing from counsel, I recommend that Defendants provide the hours and payroll information of any managers that were similarly situated to Plaintiff as a bar manager. Defendants need not turn over payroll or any other information for anyone above that level of management such as a general manager. The information would be relevant to whether Plaintiff was being treated (paid) like a manager during the time in question. Defendants' counsel, while disagreeing for the reasons stated above, agreed to provide the information.

### Issue 2

As to Issue 2, the Plaintiff agreed to provide a detailed damages calculation once Plaintiff received all of the discovery to be provided by Defendants.

**Issue 3**

As to Issue 3, I recommend the Court not order Plaintiff to disclose which documents she copied from Defendants during the document production by Defendants. When Defendants provided discovery, the documents were not in response to the Requests for Production by each request number. Defendants provided a room with a large amount of documents Defendants stated were grouped by "categories" and were not provided numerically in response to the documents requested. Plaintiff 's counsel was only allowed to examine and scan documents under the supervision of Defendants' employees. Defendants were going to charge .20 per each document if Plaintiff wanted copies.

Under those very restrictive conditions, Plaintiff's counsel stated they were not really able to examine a large amount of documents and were left to simply copy what they could cull out of the mass of documents. It is obvious that they copied what they adjudged to be important documents. Disclosure of what documents Plaintiff found to be important hints of trial strategy and attorney-client privilege in planning for trial. Defendants' disclosure method certainly violates the rules requiring enumerated responses to enumerated requests and also violates the spirit of cooperative discovery that prevails in our local rules as well. Fed. R. Civ. P. 34(b)(2)(B);(b)(2)(E). Therefore I recommend the Court not order the Plaintiff to disclose which documents she and her counsel copied during the document review.

Any objection to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(a) and Local Rule 301.5a.

Date: May 9, 2017

A. David Copperthite
United States Magistrate Judge